**INMATES OF the HENRY COUNTY JAIL et al.**

v.

**T. M. "Jim" PARHAM et al.**

**Civ. A. No. C 75–1968 A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

July 7, 1976.

Stipulation and Consent Order
Sept. 27, 1976.

Deborah Carliner, Ellen Leitzer, American Civil Liberties Union Foundation of Ga., Inc., Atlanta, Ga., for plaintiffs.

Philip T. Keen, McDonough, Ga., Arthur K. Bolton, Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

JAMES C. HILL, Circuit Judge, sitting by designation.

The above-styled case was heretofore set for evidentiary hearing before the Court on Tuesday, May 18, 1976. On May 14, 1976, counsel and the Court met together for a prehearing conference to discuss such stipulations of fact and proposed resolution of issues as might be reached. Furthermore, due to an unalterable conflict, the Court advised the parties that the May 18th hearing would have to be canceled to be reset.

At the conference, it appeared generally that, while the facts are not greatly in dispute, no firm stipulations had been reached. Several suggestions regarding future handling were advanced. Though none were adopted, the Court discerns from them that the function of this federal court in this controversy may be misunderstood. This order is an attempt by the Court to clarify the issues properly before it and, perhaps, define areas of responsibility properly reposing upon others.

■ This Federal Court, as an institution, and the judge of this Court, as an individual, constitute no part of the government of Henry County.

■ Ultimately, the people of Henry County constitute its government, free to exercise the rights, and *burdened with the corresponding responsibilities* to decide for themselves all questions of county affairs. They have, for efficiency, elected Commissioners and other officers, granting to them certain powers and, by accepting those powers, these officials have assumed heavy burdens of responsibility.

■ It appears that the people have elected to have, as a county facility, a jail, being interested that law violators, and some accused of lawlessness, be locked up. While the Court knows of no provision of the Constitution or federal law made pursuant thereto requiring such facility, it seems a commendable decision to have one. Indeed, it is suggested that the people of Henry County would be justifiably outraged if dangerous criminals were set free among them for want of such a facility.

■ Having freely, voluntarily and wisely chosen to own and operate a jail, the people and officials of Henry County have entered into a sphere of governmental action properly burdened with some special responsibilities. However, they are not responsibilities thrust upon them by tyrannical government or meddlesome courts. They are the responsibilities demanded by and voluntarily assumed by free people. Perhaps a brief reminder of the sources of these responsibilities might be in order.

Two hundred years ago the colonies in America declared themselves independent of the English Crown. Through devotion and sacrifice the people of those colonies made that declaration effective so that, eleven years later, they were engaged in establishing a method for their government.

Delegates met in Philadelphia and, after debate, negotiation and compromise, adopted a Constitution. It was a great work, but it was of no effect.

Before this Constitution could have any effect at all, it had to be ratified and adopted by the people of the thirteen former colonies. Furthermore, when it was presented to the people, the people found that it was so faulty as to be unacceptable. Before the "founding fathers" could sell their Constitution to the people of Georgia and the other states, they had to admit its shortcomings and solemnly promise to add ten amendments to it.

So those ten amendments, our Bill of Rights, weren't thrust upon the people by the delegates. They were thrust upon the government by the people! Thus did the people demand and assume the first line of responsibility for seeing to it that the mandates of the Bill of Rights be obeyed.

The eighth of those ten amendments reads today, as it read then:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

It is contended now that, for various reasons, including neglect, inattention, and

lack of funds, the act of keeping a person locked up in the Henry County, Georgia, jail constitutes cruel and unusual punishment.

If so, then government is failing to abide what the people required of government before they would even consent to be governed! And it is the people of Henry County who owe to each other and the rest of the people of this country the responsibility of demanding compliance.

They have elected a sheriff, commissioners, and other officeholders to serve them. While it does not appear in the record thus far, the Court apprehends that the people of Henry County require that each officeholder subscribe to an oath that he or she will uphold and defend that Constitution. So the second line of responsibility to see to it that the Constitution be abided rests squarely upon those chosen to govern in Henry County.

■ It is on further down the line of responsibility that one comes to the Federal Court. However, it has a part to play in this constitutional scheme. It, too, was provided for (Article III) in the fundamental compact. It exists to decide disputes of fact and to apply the law to the facts so found.

■ From this brief reminder one can readily see that the Constitution is not some sort of "weapon," carried about by federal judges who apply it in a meddlesome way to the people and their institutions. Rather, it is the other way around. If it be a weapon, it is the weapon of the people with which they safeguard their freedoms from the intrusions of government.

If, as was tentatively suggested at our conference, all parties are aware of the facts and the facts show the jail to be constitutionally inadequate, then there *should* be no need for a Federal Court to be involved at all. The Court should be used by the people and their institutions to resolve disputes and not used as a haven to which the timid may repair for an order that they do that which they should do without any order.

Therefore, if there exists no genuine dispute, then the Court will expect the parties to present a consent order, properly adjusted to the facts and the law, terminating the case.

If there be genuine dispute, the Court will hear and consider the evidence and enter its order.

If the jail be found sufficient as measured by the constitutional standards in our fundamental law, the case will be dismissed.

If not, then of course, people may not be confined there.

The parties are directed to consider the issues here defined and report to the court within ten days of the filing date as to whether or not a hearing is required.

SO ORDERED, this 4th day of July, 1976.

## STIPULATION AND CONSENT ORDER

■ WHEREAS, Plaintiffs HAROLD ROGERS and ROBERT MICHAEL OFFUTT commenced this action alleging the conditions of the Henry County Jail violated their constitutional rights under the First, Eighth, and Fourteenth Amendments to the Constitution of the United States, as more fully appear by their Complaint; and,

WHEREAS, Defendants acknowledge receipt of a copy of the Complaint filed by Plaintiffs, and hereby admit the overall conditions of the Henry County Jail at the time of the filing of this suit, for many years prior to that time, and at the present time, one year subsequent, violate the First, Eighth, and Fourteenth Amendment rights of inmates incarcerated in said jail; and,

WHEREAS, Defendants admit that Plaintiff HAROLD ROGERS is a proper person to represent all convicted detainees held in the Henry County Jail; and,

WHEREAS, Defendants admit that Plaintiff ROBERT MICHAEL OFFUTT is a proper person to represent all pre-trial detainees held in the Henry County Jail, it is hereby stipulated by and between the parties that the class as alleged in the Complaint be certified.

WHEREAS, Plaintiffs and Defendants hereby waive the entry of specific findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure and consent to the entry by the court of Final Judgment of Permanent Injunction without notice or further proceeding.

NOW, THEREFORE, the parties agree as follows:

Beginning February 1, 1978, Defendants are permanently enjoined from operating the present Henry County Jail as a place of incarceration, and may not maintain this facility in any manner which would result in the detention therein of any person.

In the meantime, the following standards shall apply at the Henry County Jail:

1. Although the Minimum Standards of Health and Sanitation for Detention Facilities would limit the jail population to thirteen (13) at any one time, no more than twenty (20) shall be housed in the jail at any one time; no more than two (2) persons at one time shall be housed in the Women's Cell; no more than one (1) person at a time shall be housed in the other cells now intended for two (2) persons; nor more than three (3) persons shall be housed in the cells now intended for six (6) persons; and no more than ten (10) persons shall be housed in the cell now intended for twelve (12) persons. These figures shall not be exceeded at any time unless it is absolutely necessary from a public safety standpoint to do so, and when exceeded, shall not last longer than a forty-eight (48) hour period of time.

2. The cell block areas shall be painted a light shade of green or yellow within thirty (30) days, and then, repainted every six (6) months thereafter;

3. One hundred (100) watt light bulbs shall be installed in the cells within seven (7) days; light shall be kept on from 7:00 A.M. until 11:30 P.M., unless inmates request that the lights be turned off;

4. All windows shall be cleaned on the outside and the inside within seven (7) days, and monthly thereafter;

5. The garbage shall be removed from between the windows and the bars covering the windows within seven (7) days; thereafter, all garbage and trash shall be removed from the cell block daily;

6. Inmates shall be provided with mops, cleaning fluids and other cleaning equipment, and shall be required to clean their cells daily; cells shall be inspected daily;

7. Shower areas shall be cleaned daily;

8. Screens and missing window panes shall be installed within fourteen (14) days, and replaced within five (5) days when necessary;

9. Toilet seats and covers shall be installed within two (2) weeks, and replaced when necessary;

10. A new hot water heater, sufficient to supply water to the jail and to the sinks in the cells, shall be installed within thirty (30) days;

11. A thorough extermination of all vermin shall be executed within seven (7) days, and a contract to provide for future bi-weekly pest control services shall be executed;

12. All mattresses shall be sanitized within fourteen (14) days, and every six (6) months thereafter;

13. Inmates shall be provided with mattress covers, pillows, sheets, pillow cases and towels within seven (7) days; clean bed linens and towels shall be distributed weekly thereafter;

14. All blankets shall be cleaned within seven (7) days, and every two (2) months thereafter;

15. Each inmate shall be provided with at least two (2) blankets, and more, if needed, in the winter months;

16. All inmates shall be provided with a tooth brush, tooth paste, soap, and shaving cream within seven (7) days, said hygienic supplies to be replaced as necessary; all new inmates shall be issued such hygienic supplies upon admission;

17. Uniforms shall be provided to inmates upon admission; clean uniforms shall be provided three (3) times per week;

18. Arrangements shall be made for the laundering of inmates' clothing twice a week, on Mondays and Thursdays;

19. Inmates shall be classified and segregated according to whether they are pretrial detainees, or convicted persons, and according to sex, age, and severity of criminal charge, whenever feasible, and every attempt will be made to effect this classification;

20. Inmates shall be instructed on procedures to be followed in the event of fire;

21. A fire drill for jail personnel and inmates shall be conducted within seven (7) days, and monthly thereafter;

22. Fire extinguishers shall be installed in the cell blocks within seven (7) days;

23. The following items, cited as deficiencies in the State Fire Marshal's Report of April 29, 1976, shall be corrected:

a. Post written and graphic fire evacuation plans within seven (7) days;

b. Remove electrical wire at fuse box that runs through the wall to the exterior of building lying on the ground near old gasoline fill tank within seven (7) days;

c. Repair frayed electrical wiring suspended over head heater, from the electrical transformer hanging loose on the heater, and suspended from the ceiling heater in the bullpen and in the sub-basement within seven (7) days;

d. Install extension cords approved by the State Fire Marshal's office, and remove unapproved ones within seven (7) days;

e. Install electrical cover plate missing in kitchen ceiling over vent hood within seven (7) days;

f. Change locks to cells so that a minimum number of keys are required to release inmates, and color code said keys within two (2) weeks;

g. Replace crimped gas line in space heater in women's cell within two (2) weeks;

h. If emergency lighting has not already been installed in the bullpen, main cell, and women's cell areas, and the radio operator's room, install such lighting within two (2) weeks;

i. Install self-closing devices on the fire door leading from women's cell area to radio equipment room within two (2) weeks;

j. Repair door from kitchen to men's cell area where large holes exist at bottom and top of door;

k. Seal the following openings with sheetrock, mud, concrete, or any other material that will give a one (1) hour fire rating and prevent smoke from spreading to other portions of the building within thirty (30) days: (i) sewage drain near pipes; (ii) where conduit protrudes through floor from sub-basement; (iii) ceiling near bullpen; (iv) ceilings near flue pipes; (v) wall of food storage area leading to cell blocks;

l. If all combustible boxes, paper, and furniture have not already been removed from the sub-basement boiler room, remove all such items within seven (7) days, and keep area clear thereafter;

m. Paint ceiling of women's cell area and kitchen with approved fire retardant paint within thirty (30) days;

n. Replace door between food storage room and men's cell block area with one and three-quarter inch (1¾") solid bonded core "C" Label fire door within two (2) weeks;

o. Refer to NFPA # 96 and NFPA # 70 of the National Electrical Code, and install approved vapor proof lighting fixture globes and vapor proof electrical fixtures under the stove vent hood within two (2) weeks;

p. Acquire and maintain a Certificate of Occupancy;

q. Arrange to have a qualified electrician and a qualified heating firm make inspections of the electrical and heating systems, respectively, to check for safety features;

24. Non-prescription drugs shall be available to inmates, and a first aid kit will be maintained;

25. The Henry County Health Department shall be consulted weekly concerning appropriate menus which will provide balanced diets for inmates;

26. Metal eating utensils, which can be sterilized, shall be provided, or plastic utensils shall be disposed of after one (1) use;

27. The area behind the jail shall be secured and converted into an outside recreation area, in which the inmates may spend a minimum of four (4) hours a day;

28. The Henry County Recreation Director shall be consulted within seven (7) days for appropriate and obtainable recreation programs and equipment for the use of inmates at the Henry County Jail, and his proposals shall be implemented within thirty (30) days;

29. Books, including some law books, magazines, newspapers, games, playing cards, a television set and radio shall be acquired for use by the inmates within fourteen (14) days;

30. Visitation by friends and relatives shall be permitted from 10:00 A.M. to 11:00 A.M. on Tuesdays, 2:00 P.M. to 3:00 P.M. on Fridays, and 1:00 P.M. to 4:00 P.M. on Sundays;

31. A room, with adequate privacy, shall be provided for attorney-client consultations;

32. Written rules and disciplinary procedures shall be established to guide the conduct of all inmates; said rules and disciplinary procedures shall be distributed to inmates upon admission;

33. A log of all infraction of rules by inmates and disciplinary actions taken shall be maintained;

34. With the assistance of Plaintiffs' counsel, a handbook, of which the attached handbook is a preliminary draft, shall be prepared and distributed to all inmates and jailers, and the provisions contained therein shall be implemented; preparation, implementation, and distribution shall take place within thirty (30) days;

35. A log shall be maintained, containing the names of all inmates who report that they are ill, and a description of the inmate's problems and the treatment given;

36. The State Defendants' Motion to Dismiss will be stayed pending the decision of the United States Court of Appeals for the Fifth Circuit in *Inmates of Lamar County Jail v. T. M. "Jim" Parham,* and the State Defendants will not be parties to this Consent Order at the present time, nor will they be liable for any monetary damages;

37. The Court will retain continuing jurisdiction over this action and the parties thereto until the various periods of time hereinbefore fixed, and any extension thereof which may be granted, shall be expired, and for a sufficient length of time thereafter to make it reasonably certain that the changes of method and practice required will not be abandoned, forgotten, or neglected, but have become permanently established.

38. The matter of Plaintiffs' attorney fees has not been negotiated, and is not resolved by this Consent Order.

This the <u>27th</u> day of September, 1976.